HONORABLE BARBARA J. ROTHSTEIN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DA LI DEVELOPMENT USA LLC, a Washington limited liability company,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>DONALD GAUBE, an individual; DAVID KRAM, an individual; RICHART RUDDIE, an individual; and JERROLD KRAM, an individual,<br><br>　　　　　　　Defendants. | Case No.: 2:25-cv-0150-BJR<br><br>**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, TO COMPEL ARBITRATION, OR, IN THE ALTERNATIVE, TO STAY**<br><br>**Noted for Consideration:**<br>**May 6, 2025** |

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................... 1

II. FACTS ............................................................................................................................. 2

    A. The Purchase and Sale Agreement and Seller Financing ............................... 2

    B. The Promissory Note ....................................................................................... 2

    C. Disputes Arising Before and After Closing .................................................... 3

    D. The Tolling Agreement and Arbitration Requirement .................................. 3

    E. Assignment of the Promissory Note and Plaintiff's Litigation ..................... 4

III. ARGUMENT .................................................................................................................. 5

    A. Defendants Are Entitled to Summary Judgment for Lack of Consideration ........... 5

        1. Summary Judgment Standard ................................................................ 6

        2. Consideration Under Washington Law ................................................. 6

        3. The Promissory Note Fails For Lack of Consideration ....................... 6

    B. If Claims Remain, They Must Be Compelled to Arbitration ........................ 7

        1. Standard .................................................................................................. 7

        2. Non-Signatories May Enforce Arbitration Agreements When They Are Intended Beneficiaries or Fall Within Equitable Doctrines ......... 8

            a) Third-Party Beneficiaries Have Standing to Enforce Arbitration Provisions ............................................................................................... 9

            b) Equitable Estoppel Demands Arbitration of The Intertwined Claims ....... 10

    C. In the Alternative, The Court Should Stay the Matter Pending Arbitration ........ 12

        1. There Is No Prejudice to Plaintiff from a Temporary Stay ............... 13

        2. Parallel Litigation Imposes Significant and Unnecessary Hardship ......... 14

        3. A Stay Promotes Judicial Economy and Prevents Duplicative Litigation . 14

IV. CONCLUSION ............................................................................................................ 15

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ................................................................. 6

*Arthur Andersen LLP v. Carlisle*, 556 U.S. 624 (2009) ............................................................... 10

*Browning v. Johnson*, 70 Wn.2d 145, 422 P.2d 314 (1967) ..................................................... 6, 7

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126 (9th Cir. 2000) ............................... 8

*CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962) ......................................................... 12, 14

*David Terry Invs., LLC-PRC v. Headwaters Dev. Grp. LLC*, 13 Wn. App. 2d 159,
    463 P.3d 117 (2020) ............................................................................................................ 11, 12

*Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213 (1985) ............................................................. 8

*Ege v. Express Messenger Sys., Inc.*, No. C16-1167RSL, 2017 WL 87841
    (W.D. Wash. Jan. 10, 2017) ..................................................................................................... 8

*First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995) .................................................... 8

*Geier v. m-Qube Inc.*, 824 F.3d 797 (9th Cir. 2016) ..................................................................... 8

*Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551 (9th Cir. 1991) .......................... 6

*King v. Riveland*, 125 Wn.2d 500, 886 P.2d 160 (1994) .............................................................. 6

*Kramer v. Toyota Motor Corp.*, 705 F.3d 1122 (9th Cir. 2013) ................................................. 10

*Landis v. North American Co.*, 299 U.S. 248 (1936) .................................................................. 14

*Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857 (9th Cir. 1979) ...................................... 13

*Lonsdale v. Chesterfield*, 99 Wn.2d 353, 662 P.2d 385 (1983) ............................................... 9, 10

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983) ................................ 8

*Nationwide Mut. Fire Ins. Co. v. Watson*, 120 Wn.2d 178, 840 P.2d 851 (1992) ........................ 5

*New York Life Ins. Co. v. Mitchell*, 1 Wn.3d 545, 528 P.3d 1269 (2023) .................................. 10

*Norwood v. MultiCare Health Sys.*, 31 Wn. App. 2d 325, 548 P.3d 978 (2024) .........8, 9, 10, 11

*Patrick v. Ramsey*, No. C23-0630JLR, 2024 WL 3914866 (W.D. Wash. Aug. 21, 2024) ........11

*Postlewait Constr., Inc. v. Great Am. Ins. Companies*, 106 Wn.2d 96, 720 P.2d 805 (1986)......9

*T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Asso.*, 809 F.2d 626 (9th Cir. 1987)..................6

*Townsend v. Quadrant Corp.*, 173 Wn.2d 451, 268 P.3d 917 (2012) .......................................11

*Volt Info. Scis., Inc. v. Bd. of Trs.*, 489 U.S. 468 (1989) ...............................................................8

*Wood Products Co. v. Tri-State Constr., Inc.*, No. C04-2052Z, 2005 WL 1126928 (W.D. Wash. May 9, 2005) ...........................................................................................................9

*Yakima County Fire Prot. Dist. No. 12 v. City of Yakima*, 122 Wn.2d 371, 858 P.2d 245 (1993) .............................................................................................................10

*Young v. Young*, 164 Wn.2d 477, 191 P.3d 1258 (2008)...............................................................7

**Statutes**

9 U.S.C. § 3.....................................................................................................................................7

**Other Authorities**

RESTATEMENT (SECOND) OF CONTRACTS § 308 (1981) ...............................................................9

RESTATEMENT (SECOND) OF CONTRACTS § 71(1)-(3) (1981).......................................................6

**Rules**

Fed. R. Civ. P. 56(a) .....................................................................................................................6

**Related Cases**

*Da Li Development USA LLC v. Donald Gaube et al.*, No. 2:24-cv-0561-KKE (W. D. Wash. 2024)…..……………………………………………………………………..5

*AF Auburn, LLC v. Da Li Development LLC*, No. 01-25-0000-3371 (American Arbitration Association)……………………………………………………………5

## I. INTRODUCTION

This cases arises from a disputed commercial real estate transaction involving the White River Junction Shopping Center in Auburn, Washington. Da Li Development LLC ("**DLD**") originally agreed to sell the property to Alamo Group, LLC ("**Alamo Group**"), which subsequently assigned its purchase rights to AF Auburn, LLC ("**AF Auburn**"). The purchase involved a seller-financing arrangement under which DLD provided financing of $400,000. Although the financing terms explicitly required repayment guarantees from the partnership entity taking title to the property, DLD later obtained a Promissory Note ("**Note**") imposing personal repayment obligations directly on the individual Defendants who neither personally held title nor received any loan proceeds.

Substantial disputes emerged before closing, most notably involving DLD's significant misrepresentation regarding the size of a Bartell Drugs retail space, causing an estimated reduction in property value between approximately $800,000 to $1 million. Despite these unresolved discrepancies, the transaction closed, and DLD (as seller) and AF Auburn (as the title-taking entity at closing) agreed to arbitrate their disputes, an arbitration that has since commenced.

Plaintiff, as assignee of DLD's purported rights, now seeks to enforce the Note against the individual Defendants, alleging default. Defendants request summary judgment, asserting that the Note is unenforceable due to a complete lack of consideration, as they received no personal benefit. Alternatively, Defendants request that Plaintiff's claims be compelled into arbitration under the governing agreements due to the intertwined nature of the issues, or that this litigation be temporarily stayed pending the arbitration outcome to enhance judicial economy and avoid duplicative proceedings.

## II.    FACTS[1]

### A. The Purchase and Sale Agreement and Seller Financing

On April 13, 2021, DLD and Alamo Group executed a Purchase and Sale Agreement ("**PSA**"), under which Alamo Group, or its assigns, agreed to acquire the White River Junction Shopping Center ("**White River Junction**") from DLD. Gaube Decl., ¶ 4; **Exhibit A**. The shopping center included several commercial tenants, including at the time a Bartell Drugs, an Albertsons grocery store, and a Round Table Pizza restaurant. *See* Ex. A.

On May 28, 2021, the parties amended the PSA to incorporate, in part, a seller-financing arrangement. Gaube Decl., ¶ 5; *see also* **Exhibit B** ("**Second Amendment to the PSA**"). Pursuant to the amendment, DLD agreed to provide Alamo Group with $400,000 in "Seller Financing" as part of the purchase price, bearing 5% interest and subject to a balloon payment due after two years. *See* Ex. B at 1-2 (¶ 3). The Second Amendment to the PSA expressly required that "*the partnership entity* that takes title to the property shall personally guarantee the loan." *Id*. at 3 (emphasis added). That provision is significant—because prior to closing, Alamo Group assigned its rights under the PSA to AF Auburn. Gaube Decl., ¶¶ 14–15, *see also* **Exhibit D**.

### B. The Promissory Note

On September 2, 2021, the Defendants—Donald Gaube, David Kram, Richart Ruddie, and Jerrold Kram—executed a Promissory Note ("**Note**") in the amount of $400,000 in favor of DLD. Dkt. 1-1; Ex. A; *see also* **Exhibit C**. The Note begins with the phrase "FOR VALUE RECEIVED," yet it fails to identify what value was provided—or to whom. *See id*. It does not state that it guarantees another party's debt. *Id*. Instead, it imposes direct repayment obligations

---

[1] **Exhibits A-G** referenced herein are attached to the Declaration of Donald Gaube ("**Gaube Decl.**").

on the individual Defendants in their personal capacities, despite the fact that they neither took title to the property—nor have ever held title—in their individual names. Tellingly, the Complaint does not allege that the individual Defendants received any portion of the $400,000. *See* Dkt. 1-1.

C. Disputes Arising Before and After Closing

Before closing, several disputes arose between AF Auburn (as the entity taking title) and DLD (the seller) concerning the property's commercial tenants. *See* Gaube Decl., ¶ 11. Of these, the most significant involved a material discrepancy in DLD's representations of the square footage of the now-former Bartell Drugs space. *Id*., ¶ 12. Specifically, while DLD represented the space as measuring 15,861 square feet, it actually measured only 13,927 square feet—a shortfall of 1,934 square feet. *Id*. AF Auburn estimates that this discrepancy resulted over time in a nearly $1 million variance in property value, inclusive of interest. *Id.*, ¶ 13.

AF Auburn closed on the White River Junction purchase on September 23, 2021. *Id.*, ¶ 15; *see also* Ex. D. At the time of closing, the Bartell Drugs issue remained unresolved. Gaube Decl., ¶ 16. Although the parties agreed to address the issue post-closing, DLD failed to meaningfully engage. *Id*. Instead of working toward resolution, DLD retained counsel and insisted that the matter be resolved through litigation or arbitration. *Id*.

D. The Tolling Agreement and Arbitration Requirement

On June 20, 2022, AF Auburn and DLD entered into a Tolling Agreement, extending the deadline for AF Auburn to assert claims against DLD. *Id*., ¶ 17; *see also* **Exhibit E**. These included claims related to the "square footage of the former Bartell Drugs space." Ex. E at 1.

The agreement did more than toll deadlines; it also required that all claims between AF Auburn and DLD be resolved through arbitration before a mutually agreed-upon arbitrator. *Id*.

at 2 (¶ 4). It further provided that any claim would be deemed asserted as of the date AF Auburn served its arbitration demand. *Id*.

AF Auburn served its arbitration demand on DLD on August 12, 2022, satisfying the timing and service requirement of the Tolling Agreement. *See* Gaube Decl., ¶ 18; *see also* **Exhibit F**.

In the Arbitration Demand, AF Auburn asserts a claim for breach of contract, alleging, in relevant part, as follows:

> In the PSA, Da Li represented and warranted that the information it provided regarding White River Junction was true and accurate, including information provided in books and records. In addition, as a condition to close, AF Auburn's lender required Da Li to indemnify the buyer and lender as to the truth and accuracy of the books and records, including the rent roll, of Da Li and Da Li agents. Da Li guaranteed that this information was true and accurate.
>
> Da Li represented and warranted that the former Bartell Drugs space in White River Junction was 15,861 square feet. In fact, the former Bartell Drugs space in White River Junction is 13,927 square feet, a difference of 1,934 square feet. This difference represents a diminution in value of White River Junction of approximately $800,000.
>
> Da Li breached its warranty and guarantee that the books and records relating to White River Junction were accurate, specifically regarding the size of the former Bartell Drugs space. AF Auburn was harmed by that breach.

Ex. F at 2 (¶¶ 6–8).[2]

### E. Assignment of the Promissory Note and Plaintiff's Litigation

According to Plaintiff's Complaint, DLD, a now defunct entity, assigned the Note to Plaintiff Da Li Development USA LLC ("**Da Li**") on April 1, 2023, transferring all right, title, and interest in the Note. Dkt. 1-1, ¶ 10. The Note matured on September 1, 2023, with an alleged balance due of $428,438.25. *Id*. ¶ 13.

---

[2] In the context of the above language from the Arbitration Demand, "Da Li" refers to Da Li Development LLC, the original seller.

Plaintiff initially filed suit in this Court on April 23, 2024, and refiled the next day. *See Da Li Development USA LLC v. Donald Gaube*, Cause No. 2:24-cv-0561-KKE (W.D. Wash. 2024) ("**Da Li One**"), Dkts. 1, 4. The Amended Complaint in *Da Li One* asserted four causes of action—(i) Breach of Contract, (ii) Promissory Estoppel, (iii) Unjust Enrichment, and (iv) Conversion—all premised on the Note. *Id*. Facing potential Rule 11 sanctions over jurisdictional misstatements, Plaintiff voluntarily dismissed *Da Li One*. *See Da Li One*, Dkts. 22, 30.

Subsequently, on October 28, 2024, Plaintiff refiled a near-identical complaint in state court. *See* Dkt. 1-1. Defendant Gaube timely removed the case to this Court on January 23, 2025. *See* Dkt. 1. That same day, AF Auburn formerly initiated arbitration against DLD pursuant to the Tolling Agreement and the previously served Arbitration Demand. *See AF Auburn, LLC v. Da Li Development LLC*, Case No. 01-25-0000-3371 (American Arbitration Association, Jan. 23, 2025); *see also* **Exhibit G**.

### III.    ARGUMENT

**A. Defendants Are Entitled to Summary Judgment for Lack of Consideration.**

This case does not hinge on the adequacy of consideration—it turns on whether any consideration existed at all. Without consideration, a contract is nothing more than paper and ink. Under Washington law, the existence of consideration is a threshold legal issue, appropriately resolved at summary judgment. *See Nationwide Mut. Fire Ins. Co. v. Watson*, 120 Wn.2d 178, 195, 840 P.2d 851 (1992) ("Whether a contract is supported by consideration is a question of law and may be properly determined by a court on summary judgment"). Here, summary judgment is warranted because the Note lacks consideration and is therefore unenforceable.

### 1. Summary Judgment Standard

Summary judgment is appropriate where "there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Asso.*, 809 F.2d 626, 630–33 (9th Cir. 1987). To defeat a motion for summary judgment, the non-moving party "must present significant probative evidence tending to support its claim or defense." *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). While reasonable inferences must be drawn in the non-movant's favor, "the mere existence of a scintilla of evidence … will be insufficient; there must be evidence on which the jury could reasonably find for the" non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

### 2. Consideration Under Washington Law[3]

Washington law defines consideration as "any act, forbearance, creation, modification or destruction of a legal relationship, or return promise given in exchange." *King v. Riveland*, 125 Wn.2d 500, 505, 886 P.2d 160 (1994). The hallmark is a bargained-for exchange: the promisor must seek something specific, and the promisee must provide it as part of the deal. *See* RESTATEMENT (SECOND) OF CONTRACTS § 71(1)-(3) (1981). Courts do not weigh fairness, only legal sufficiency—whether anything of value supported the obligation. *Browning v. Johnson*, 70 Wn.2d 145, 147, 422 P.2d 314 (1967). As that court put it, legal sufficiency "is concerned not with comparative value but with that which will support a promise." *Id*.

### 3. The Promissory Note Fails For Lack of Consideration

The Note fails for lack of consideration. Although it recites the boilerplate phrase "FOR VALUE RECEIVED," neither the Note nor the Complaint identifies what—if any—value the individual Defendants actually received. The funds were not loaned to them personally. Rather,

---

[3] The Note is to be construed and interpreted in accordance with Washington law. Dkt. 1-1. ¶ 9.

the financing was part of a broader transaction: the purchase of the White River Junction property. The original "Purchaser" under the PSA was the Alamo Group, and the entity that ultimately took title at closing was AF Auburn—not the individual members of Alamo Group. The Second Amendment to the PSA confirms this: the seller financing was intended for "the partnership entity that takes title," and it was that entity—not its individual members—that was to guarantee the loan.

Plaintiff cannot ask this Court to enforce the Note solely against the individual members under these circumstances—particularly without identifying any benefit they received in exchange. A valid contract must rest on a bargained-for exchange. *Browning,* 70 Wn.2d at 147. The Note does not purport to be a guaranty, and any claim that it is would be inconsistent with the Second Amendment to the PSA, which expressly provided that the "partnership entity" taking title would be the guarantor. The Note does not name AF Auburn as a principal obligor, nor does it suggest that Defendants were agreeing to answer for the debt of another. Instead, it reads as a primary obligation—yet one wholly untethered to any consideration.[4]

**B. If Claims Remain, They Must Be Compelled to Arbitration.**

    **1. Standard**

Under Section 3 of the Federal Arbitration Act (FAA), when a party requests arbitration of an issue covered by an agreement, the court "shall … stay the trial of the action until such arbitration has been had." 9 U.S.C. § 3. The Supreme Court has made the directive unequivocal: the FAA "leaves no place for the exercise of discretion," but instead "mandates that district

---

[4] Plaintiff's equitable claims rest on the premise that $400,000 was loaned to Defendants. But there is no basis for requiring these Defendants to repay a loan they never received—because no benefit was ever conferred. *See, e.g., Young v. Young*, 164 Wn.2d 477, 484, 191 P.3d 1258 (2008) (noting that to assert a claim for unjust enrichment under Washington law, Plaintiff must show, in part, a benefit conferred upon the defendants by the plaintiff).

courts *shall* direct the parties to proceed to arbitration." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original).

The Ninth Circuit applies this rule faithfully. A stay is mandatory when two conditions are met: (i) a valid agreement to arbitrate exists, and (ii) the dispute falls within the scope of that agreement. *See Geier v. m-Qube Inc.*, 824 F.3d 797, 799 (9th Cir. 2016); *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). Judge Lasnik, applying that same test, recently reaffirmed that "a motion to compel arbitration ***must*** be granted if there is a valid agreement to arbitrate and the dispute falls within the scope of that agreement." *Ege v. Express Messenger Sys., Inc.*, No. C16-1167RSL, 2017 WL 87841, at *2 (W.D. Wash. Jan. 10, 2017), *aff'd*, 745 F. App'x 19 (9th Cir. 2018) (emphasis added) (citing *Chiron Corp.*, 207 F.3d at 1130).

In applying this framework, courts rely on ordinary state-law principles of contract formation. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). And any doubts regarding the scope of arbitrable issues must be resolved in favor of arbitration. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983); *see also Volt Info. Scis., Inc. v. Bd. of Trs.*, 489 U.S. 468, 476 (1989) ("due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration").

2. **Non-Signatories May Enforce Arbitration Agreements When They Are Intended Beneficiaries or Fall Within Equitable Doctrines**

While Defendants did not sign the Tolling Agreement, that does not preclude them from invoking its arbitration clause. Courts routinely allow non-signatories to compel arbitration where, as here, they are either third-party beneficiaries or fall within the bounds of equitable estoppel. *See Ege*, 2017 WL 87841, at *2; *Norwood v. MultiCare Health Sys.*, 31 Wn. App. 2d

325, 335, 548 P.3d 978 (2024). Washington contract law emphasizes substance over signature—and both doctrines support arbitration of Plaintiff's claims.

### a) Third-Party Beneficiaries Have Standing to Enforce Arbitration Provisions

Washington law does not limit arbitration rights to those who physically signed a contract. When a contract is made for the benefit of another, the party—whether named in the agreement or not—may invoke the agreement's protections, including its arbitration clause. The rule is well settled: "[b]oth contracting parties must intend that a third party beneficiary contract be created," and the test is whether "performance under the contract would necessarily and directly benefit that party." *Postlewait Constr., Inc. v. Great Am. Ins. Companies*, 106 Wn.2d 96, 720 P.2d 805 (1986). A party need not be identified by name so long as the benefit is evident from the agreement's terms. *See Wood Products Co. v. Tri-State Constr., Inc.*, No. C04-2052Z, 2005 WL 1126928, at *6 (W.D. Wash. May 9, 2005); RESTATEMENT (SECOND) OF CONTRACTS § 308 (1981).

That principle applies here. If Plaintiff maintains that the Note was supported by consideration—and thus suitable for enforcement (which it is not for the reasons explained above)—then it necessarily admits that the individual Defendants were the intended beneficiaries of the broader transaction that enabled the seller financing—namely, the PSA and the Second Amendment to the PSA. The Note itself does not identify what value was provided or to whom. And if Plaintiff claims that consideration flowed from the purchase agreement, then Defendants were its intended, if unnamed, beneficiaries. As such, they are entitled to enforce the arbitration governing the transactions from where such consideration arose.

The Washington Supreme Court addressed a similar scenario in *Lonsdale v. Chesterfield*, 99 Wn.2d 353, 361, 662 P.2d 385 (1983). There, the court held that a non-signatory could enforce

an agreement because the contract was functionally incomplete without them: the plaintiff could not fulfill its obligations without directly conferring a benefit on the non-signatory. *Id*. at 362. The parties' intent to benefit the third party was thus inferred from the contract's structure and purpose—not the writing itself. *Id*.

The same reasoning applies here. DLD and AF Auburn entered the Tolling Agreement to preserve claims tied to the seller-financed transaction at the heart of this dispute—specifically, whether DLD misrepresented the square footage of the former Bartell Drugs space or other key commercial terms. If those representations prove false in arbitration, the underlying contract may be deemed voidable, rendering the seller-financing entirely illusory. *See e.g.*, *New York Life Ins. Co. v. Mitchell*, 1 Wn.3d 545, 563, 528 P.3d 1269 (2023) (a fraudulent misrepresentation claim typically renders the contract voidable); *Yakima County (W. Valley) Fire Prot. Dist. No. 12 v. City of Yakima*, 122 Wn.2d 371, 390, 858 P.2d 245 (1993) ("A fraudulent misrepresentation or, under the right circumstances, even a material innocent misrepresentation can render a contract voidable.").

In short, the Tolling Agreement was structured to protect not only the named signatories, but also those intimately connected to the transaction—here, the Defendants. That is more than enough to confer third-party beneficiary status under Washington law and entitles Defendants to compel arbitration of Plaintiff's claims.

### b) Equitable Estoppel Demands Arbitration of The Intertwined Claims

Like third-party beneficiary law, equitable estoppel allows a non-signatory to compel arbitration when state law supports it. *See Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128 (9th Cir. 2013) (citing *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009)); *see also Norwood*, 31 Wn. App. 2d at 339–41.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, TO COMPEL ARBITRATION, OR, IN THE ALTERNATIVE, TO STAY - 10

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.225.2250 | F 888.233.5869

Washington courts recognize two strands of equitable estoppel in the arbitration context. The first, known as "direct benefits estoppel," focuses on whether a signatory is trying to claim the benefits of a contract while dodging its arbitration clause. That path is not relevant here. *See Patrick v. Ramsey*, No. C23-0630JLR, 2024 WL 3914866, at *5 (W.D. Wash. Aug. 21, 2024) ("Finding no Washington appellate authority applying direct benefits estoppel to compel a signatory plaintiff to arbitrate its claims against a nonsignatory defendant, the court declines to apply that doctrine here.").

On the other hand, the second, "intertwined claims estoppel," fits this case to a tee. It applies when the claims a signatory brings against a non-signatory are so entangled with the underlying contract obligations that separating them would be artificial. *Norwood*, 31 Wn. App. 2d at 339–41 (citing *Townsend v. Quadrant Corp.*, 173 Wn.2d 451, 464 (2012)); *David Terry Invs., LLC-PRC v. Headwaters Dev. Grp. LLC*, 13 Wn. App. 2d 159, 169–72, 463 P.3d 117 (2020)).

The rule is rooted in principles of fairness. It applies when a signatory sues a non-signatory over claims "based on the same facts and ... inherently inseparable from arbitrable claims against signatory defendants." *Norwood*, 31 Wn. App. 2d at 335 (quoting *Terry Invs.*, 13 Wn. App. 2d at 171)). Courts evaluating estoppel in this context look to the overlap in parties, facts, and legal issues. If the contract binds them together, so should the forum.

The standard is met here. Plaintiff's claims cannot be meaningfully separated from the PSA or the Tolling Agreement. The Note did not arise in isolation—it stems directly from the seller-financing terms in the Second Amendment to the PSA, which expressly required "the partnership entity that takes title" to personally guarantee the loan. But the Note does not name that entity. Instead, it targets the individual Defendants, members of Alamo Group, which had

assigned its rights to AF Auburn—the entity that took title and is now arbitrating the related dispute with DLD. The documents are intertwined, and the dispute is indivisible.

The Washington Court of Appeals followed similar reasoning in *David Terry Investments*. There, the court compelled arbitration of tort claims—including fraud, conversion, and unjust enrichment—because they were too closely tied to the parties' joint venture agreements to be separated. *Terry Invs.*, 13 Wn. App. 2d at 172. Although the plaintiffs tried to frame their case outside the four corners of the contract, their claims ultimately depended on promises, duties, and alleged misconduct rooted in the agreements themselves. The court held that those claims, though tortious in form, were contractual in substance and thus had to be resolved in arbitration. *Id.* ("We conclude DTI's claims against Stoneridge and PRC are sufficiently intertwined with the joint venture agreements so as to require arbitration.").

The same is true here. Plaintiff's breach of contract claim leans on the Note, but that Note is inseparable from the underlying purchase, the alleged misrepresentations tied to it, and the agreement to arbitrate those very claims. Splitting these claims across two forums would squander efficiency, sow inconsistency, and undercut the very purpose of arbitration. Equitable estoppel bars that result, and therefore the Court should compel Plaintiff's intertwined claims to arbitration.

**C. In the Alternative, The Court Should Stay the Matter Pending Arbitration.**

A stay today may avoid confusion tomorrow. Specifically, when parallel proceedings may clarify key issues, a temporary stay can serve the interests of efficiency and fairness. Courts have inherent authority to manage their dockets in this way, guided by well-established principles. *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962).

In evaluating whether a stay is appropriate, courts typically consider three factors: (i) any prejudice from delay; (ii) the hardship of moving forward without needed clarity; and (iii) the interests of judicial economy—namely, whether the stay will simplify issues, reduce duplicative effort, or avoid wasteful litigation. *Id*. Where a related proceeding—whether judicial, administrative, or arbitral— may resolve overlapping issues, a stay is not only efficient, but equitable. *See Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863–64 (9th Cir. 1979) (collecting cases).

To guide the Court's analysis, Defendants address each of these three considerations in turn. Each one independently—and together—strongly supports a temporary stay pending resolution of the parallel arbitration.

**1. There Is No Prejudice to Plaintiff from a Temporary Stay**

Plaintiff cannot credibly claim prejudice from a temporary stay when the core dispute is already being arbitrated between AF Auburn and DLD. That arbitration squarely addresses rights and obligations under the PSA—including whether DLD misrepresented key facts about the White River Junction property and whether its assignee, Da Li, can now recover seller-financed funds despite those misstatements.

This litigation seeks to enforce a $400,000 promissory note allegedly owed by Defendants. But the threshold issue—who received consideration and whether repayment is enforceable—depends on the arbitration's outcome. Defendants maintain the Note lacks consideration, that AF Auburn—not Defendants—received the funds, and that DLD's misstatements undermined the entire bargain.

Far from prejudicing Plaintiff, a stay would clarify and streamline the very issues Plaintiff has raised. Plaintiff seeks only monetary relief and alleges no irreparable harm. Under these

circumstances, a brief pause poses no real downside. Conversely, proceeding now risks duplicative effort and inconsistent outcomes. A stay avoids both.

### 2. Parallel Litigation Imposes Significant and Unnecessary Hardship

Moving forward now—while arbitration is underway—imposes substantial and needless hardship. The Defendants are being asked to defend a Note that lacks consideration—and may ultimately prove illusory. If AF Auburn prevails in arbitration on its claims that DLD made material misrepresentations about the transaction—including those that induced the seller financing—then Plaintiff may have no enforceable right under the Note at all. That outcome would unravel the very foundation of this lawsuit. Forcing Defendants through full-scale litigation under such uncertain circumstances is inequitable.

The burden is especially acute here because Defendants are not institutional actors. They are individuals facing personal liability stemming from a complex commercial transaction—one already the subject of arbitration between the relevant business entities. Maintaining parallel proceedings risks conflicting outcomes and compels Defendants, individually or via AF Auburn, to rehash the same facts in two separate forums.

### 3. A Stay Promotes Judicial Economy and Prevents Duplicative Litigation

The final factor looks to the "orderly course of justice," including whether a stay will simplify issues, proof, or legal questions. *CMAX*, 300 F.2d at 268 (citing *Landis v. North American Co.*, 299 U.S. 248, 254–55 (1936)).

Here, the overlap is substantial. Two proceedings covering the same ground would mean duplicative discovery, redundant expert work, overlapping legal briefs, increased costs, and a heightened risk of conflicting rulings that could undermine confidence in both forums. There is no practical or legal justification for forcing either party to fight a two-front battle over the same dispute. The arbitration is already in motion. Letting it run its course will likely resolve—or at

least clarify—the very issues at stake here. A stay would prevent procedural whiplash and focus the parties' efforts where they belong: on resolving the core dispute.

In short, a stay advances fairness, reduces burdens, and respects the forum the parties and intended beneficiaries already chose. The Court should grant it.

## IV.  CONCLUSION

For the reasons set forth above, Defendants respectfully ask that the Court grant summary judgment. If Plaintiff's claims survive summary judgment, however, they must be compelled to arbitration under the binding agreements. At the very least, the Court should stay proceedings under its inherent authority to promote judicial economy and avoid inconsistent outcomes.

Dated this 1st day of April, 2025.

Respectfully submitted,

**BAILEY DUQUETTE P.C.**

By */s/ Hozaifa Y. Cassubhai*
Hozaifa Y. Cassubhai, WSBA #39512
William R. Burnside, WSBA #36002
800 Fifth Ave, Suite 101-800
Seattle, Washington 98104
Phone: 206.225.2250
Facsimile: 888.233.5869
Email: hozaifa@baileyduquette.com
will@baileyduquette.com

*Attorneys for Defendants*

*I certify that this memorandum contains 4,320 words, incompliance with the Local Civil Rules.*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 1, 2025, I electronically filed the foregoing document using the CM/ECF system, which will send notification of such filing to the following counsel for Plaintiff Da Li Development USA LLC:

Charles E. Stoecker
cstoecker@mcglinchey.com

Heidi N. Urness
hurness@mcglinchey.com

Dated this April 1, 2025 at Westfield, New Jersey.

*/s/ Hozaifa Y. Cassubhai*
Hozaifa Y. Cassubhai, WSBA #39512