NOTE ON MOTION CALENDAR:  May 30, 2025

**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**

IN THE MATTER OF:

DA LI DEVELOPMENT USA LLC, a
Washington Limited Liability Company,

        PLAINTIFF,

  v.

DONALD GAUBE, an Individual, DAVID
KRAM, an Individual, RICHART RUDDIE, an
Individual, and JERROLD KRAM, an
Individual,

        DEFENDANTS.

Case No.  2:25-cv-00150-BJR

**PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT AND
RESPONSE TO DEFENDANTS'
MOTION FOR SUMMARY
JUDGMENT, TO COMPEL
ARBITRATION, OR, IN THE
ALTERNATIVE, TO STAY [D.E. 16][1]**

Plaintiff DA LI DEVELOPMENT USA, LLC ("Da Li" or "Plaintiff"), by and through its

undersigned counsel, hereby files its Motion for Summary Judgment and Response to Defendants,

DONALD GAUBE ("Gaube"), DAVID KRAM ("D. Kram"), RICHART RUDDIE ("R.

Ruddie"), and JERROLD KRAM's ("J. Kram") (collectively the "Defendants") Motion for

Summary Judgment, to Compel Arbitration, or in the Alternative, to Stay ("Motion"), and in

support thereof states the following.

---

[1] This brief is 25 pages in length.  Although this exceeds the 24 page limit set forth in Local Rule 7(e)(3), this brief includes both a response to the Defendants' Motion, as well as the Plaintiff's own Motion for Summary Judgment. Had these briefs been filed separately, Plaintiff would have been provided with 48 pages in total (24 for the response brief and 24 for its own summary judgment motion).  However in an effort to streamline this matter and encourage judicial economy, the Plaintiff collapsed both the response and the motion into a single brief.  If this Court requires the Plaintiff to seek leave for additional pages Plaintiff will promptly submit an appropriate motion and proposed order.

PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT & RESPONSE TO DEFENDANTS'        Page **1** of 27
MOTION FOR SUMMARY JUDGMENT

**McGlinchey Stafford**
2101 4th Avenue, Suite 2050
Seattle, WA 98121
Telephone (206) 657-8820
Facsimile (206) 299-5603

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................ 2

TABLE OF AUTHORITIES .................................................................................................... 3

I.  INTRODUCTION ............................................................................................................ 4

II.    FACTS ............................................................................................................................ 5

   A.   The Promissory Note ................................................................................................ 5

   B.   The Purchase and Sale Agreement .......................................................................... 6

   C.   The Property Square Footage Dispute ..................................................................... 7

   D.   The Tolling Agreement and Arbitration .................................................................. 9

   E.   The Procedural History ............................................................................................ 9

III.    ARGUMENT ................................................................................................................ 11

   A.   Standard of Review ................................................................................................. 11

   B.   There Was Sufficient Consideration To Enforce The Note ................................... 12

   C.   Da Li Has Asserted Promissory Estoppel and Unjust Enrichment ........................ 16

   D.   The Note Dispute Should Not be Compelled to Arbitration ................................... 18

   E.   None of the Affirmative Defenses Preclude the Entry of Summary Judgment ................ 25

IV.    CONCLUSION ............................................................................................................. 27

CERTIFICATE OF SERVICE ................................................................................................ 29

PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT & RESPONSE TO DEFENDANTS'          Page **2** of 27
MOTION FOR SUMMARY JUDGMENT

**McGlinchey Stafford**
2101 4th Avenue, Suite 2050
Seattle, WA 98121
Telephone (206) 657-8820
Facsimile (206) 299-5603

1

## TABLE OF AUTHORITIES

2
**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) . 12

3
Ashcroft v. Iqbal, 556 U.S. 662, 663, 129 S. Ct. 1937, 1940 (2009)................................25

Baldwin v. Silver, 165 Wn. App. 463, 473, 269 P.3d 284 (2011).....................................12

4
*Bowman v. Webster*, 44 Wn. 667, 269 P.2d 960 (1954) ........................................ 24, 25

*Christie v. Gmeiner*, 62 Wn.2d 808, 813, 384 P.2d 812, 814 (1963) ........................... 14

5
*Deep Water Brewing, LLC v. Fairway Resources Ltd.*, 152 Wn.App. 229 (2009) ..................... 19

*Donald B. Murphy Contractors, Inc. v. King County*, 112 Wn.App. 192 (2002)....................19

6
*Doron v. E. Wash. Univ.*, Docket No. 31636-0-III, 2014 Wn. App. LEXIS 2849, at *75 (App.
Dec. 9, 2014)................................................................................ 16

7
*Harrison v. Puga*, 4 Wn. App. 52, 62, 480 P.2d 247, 254 (1971) ............................... 15

*Hatfield v. Columbia Fed. Savs. Bank*, 57 Wn. App. 876, 885, 790 P.2d 125 (1990)................. 16

8
Hennessey v. Radius Global Solutions LLC, Docket No. 3:24-cv-05654-DGE, 2024 WL 496134,
at *2-3 (W.D. Wash. Nov 6, 2024)..............................................................26

9
*Kessinger v. Anderson*, 31 Wn. 2d 157, 196 P.2d 289 (1948)..................................... 24

*Key Development Inv., LLC v. Port of Tacoma*, 173 Wn.App. 1 (2013)...................................... 16

10
*Kim v. Moffett*, 156 Wn. App. 689 (2010) ........................................... 18, 19, 22

*King v. Riveland*, 125 Wn. 2d 500, 505, 866 P.2d 160 (1994) ................................... 13

11
*Labriola v. Pollard Group, Inc.*, 152 Wn. 2d 828, 833 (2004).................................... 13

Lehrer v. State, Dept. of Social and Health Services, 101 Wn.App. 509, 515 (2000)..............27

12
*Lonsdale v. Chesterfield*, 99 Wn. 2d 353 (1983) ............................................. 16

*LSQ Funding Group, L.C. v. EDS Field Services*, 879 F. Supp. 1320, 1329 (M.D. Fla. 2012)... 15

13
*McDonald Constr. Co. v. Murray*, 5 Wn. App. 68 (1971)............................................. 19

*Olsen Media v. Energy Sciences*, 32 Wn. App. 579, 584, 648 P.2d 493 (1982) ........................ 20

14
*Peterson v. Neal*, 48 Wn.2d 192, 195, 292 P.2d 358, 360 (1956) ............................... 25

*Please-Graham, LLC v. Loshbaugh*, 164 Wn. App. 530, 539, 269 P.3d 1038, 1044 (2011) ....... 14

15
*Puget Mill Co. v. Kerry*, 183 Wn. 542, 557, 49 P.2d 57 (1935) ................................ 13

RSD AAP, LLC v. Alyeska Ocean, Inc., 190 Wn. App. 305, 314-316 (2025).......................27

16
*Safeco Ins. Co. of America v. Young*, Docket No. 2:22-cv-00896-BJR, 2022 U.S. Dist. LEXIS
180716, at *5-6 (W.D. Wash. Oct. 3, 2022) ................................................... 12

17
Strich v. Accelitec, Inc., C13-1092RSL, 2013 WL 5966536, at *1(W.D. Wash. Nov. 8, 2013)..12

*United States v. JP Morgan Chase Bank Account No. Ending 8215*, 835 F.3d 1159, 1162 (9th

18
Cir. 2016) ................................................................................. 11

*Warner v. Design and Build Homes, Inc.*, 128 Wn. App. 34 (2005) ............................. 18

19
*Washington Education Assn. v. Dept. of Retirement Systems*, 181 Wn. 2d 212, 225, 332 P.3d 428
(2014).................................................................................... 16

20
*Young v. Young*, 164 Wn. 2d 477, 484-85, 191 P.3d 1258 (2008) ............................... 17

21

22

23

PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT & RESPONSE TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

Page **3** of **27**

**McGlinchey Stafford**
2101 4th Avenue, Suite 2050
Seattle, WA 98121
Telephone (206) 657-8820
Facsimile (206) 299-5603

# I. INTRODUCTION

This matter is based on a simple and straightforward premise: Defendants have breached the clear terms of a promissory note entered into between the parties by failing to make the required note payments. As a result, the Plaintiff filed this lawsuit asserting the following three causes of action: (1) breach of contract; (2) promissory estoppel; and (3) unjust enrichment. [D.E. 1-1]. The note at issue is an instrument separate and apart from any sales agreement entered into between Da Li and any other parties (including AF Auburn LLC ("Auburn") and Alamo Group, LLC ("Alamo")) and as such can and should, be treated independently. For the reasons explained in more detail below, Defendants' Motion for Summary Judgment is contrary to law and the facts of this case and must therefore be denied and Plaintiff's Motion for Summary Judgment should be granted.

The heart of the present lawsuit is enforcement of a validly executed promissory note. Plaintiff Da Li is the assignee of the note executed by Defendants in favor of Da Li Development, LLC ("DLD"); both Da Li and DLD are subsidiaries of a common parent company. See Da Li Declaration, ¶6. Defendants, Donald Gaube, David Kram, Richart Ruddie, and Jerrold Kram, are the borrowers under that Note. *Id*. at ¶9. Defendants have attempted to muddy the issues by conflating the parties to two separate transactions, the aforementioned note, and a separate purchase and sale agreement to Auburn, a non-party to this action. Defendants are principals of both Alamo Group ("Alamo"), the original intended purchaser of a commercial property located at 3734-4018 A Street SE, Auburn, King County, Washington, as well as Alamo's assignee and the ultimate purchaser of said property, AF Auburn, LLC ("Auburn"). *Id*. at ¶7. The aforementioned property is also known as the White River Junction Shopping Center (henceforth "Property" or "Subject Property"). *Id*.

PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT & RESPONSE TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

Page **4** of **27**

**McGlinchey Stafford**
2101 4th Avenue, Suite 2050
Seattle, WA 98121
Telephone (206) 657-8820
Facsimile (206) 299-5603

The central action at issue in this case is Plaintiff's attempt to enforce the Note signed by Defendants, although they are attempting to deflect their clear promises under the Note, ignore corporate formalities, claim interests to which they are not legally entitled, and force Plaintiff to accept something other than what both parties agreed to accept in the contracts at issue in this case.

## II.    FACTS

### A.    The Promissory Note

As admitted by the Defendants, on September 2, 2021, the Defendants executed a Promissory Note ("Note") in the amount of $400,000 in favor of DLD. [D.E. 17, Exh. C]. Defendant Gaube, one of four signatories, drafted the Note. See Da Li Declaration, ¶10. The Note balance contained an interest rate of 5% and all sums due and owing were to be paid on September 1, 2023. *Id.* at 13, 17.¶ Neither Auburn nor Alamo (nor any other parties other than DLD and the Defendants) were signatories to the Note. These commercial entities are likewise not mentioned or referred to in the Note. Following the execution of the Note, at the direction of the Defendant Gaube, DLD provided a financing credit of $400,000 to Auburn in connection with the purchase of a piece of real property. See Da Li Declaration, ¶11-12; [D.E. 17, Exh. D].

On April 1, 2023, DLD assigned the Note to Da Li. *Id.* at ¶16. Following the September 1, 2023 maturity date, the Defendants have failed to remit a single payment under the Note to Da Li. *Id.*, ¶17. This payment default constitutes an "Event of Default" under the terms of the Note. [D.E. 17, Exh. C]. The Note also contains the following provision:

> 15.    **Payment Without Offset.**    Principal and interest shall be paid without deduction or offset in immediately available funds in lawful money of the United States of America. Payments shall be deemed received only upon actual receipt by Lender.

*Id.*

**B.    The Purchase and Sale Agreement**

Separate and apart from the Note, on April 13, 2021, Da Li and Alamo executed a Purchase and Sale Agreement ("PSA") under which Alamo agreed to acquire the Property from Da Li. [D.E. 17, ¶4, Exh. A]. Gaube has admitted that he was the managing member of Alamo. [D.E. 17, ¶2]. The PSA, despite being 20 pages in length, does not mention nor refer to the Note at any point. *Id.* at Exh. A. It does, however, contain the following provision:

> 42. **Miscellaneous Provisions.**
>
>   a. **Complete Agreement.** This Agreement and any addenda and exhibits thereto state the entire understanding of Buyer and Seller regarding the sale of the Property. There are no verbal or other written agreements which modify or affect the Agreement, and no modification of this Agreement shall be effective unless agreed in writing and signed by the parties.

*Id.* at p. 13.

The PSA also contains the following provision regarding DLD's representations under Paragraph 32:

> If prior to Closing Seller or Buyer discovers any information which would cause any of the representations above to be false if the representations were deemed made as of the date of such discovery, then the party discovering the information shall promptly notify the other party in writing and Buyer, as its sole remedy, may elect to terminate this Agreement by giving Seller notice of such termination within five (5) days after Buyer first received actual notice (with the Closing Date extended to accommodate such five (5) day period), and in such event, the Earnest Money Deposit shall be returned to Buyer. Buyer shall give notice of termination within five (5) days of discovering or receiving written notice of the new information. Nothing in this paragraph shall prevent Buyer from pursuing its remedies against Seller if Seller had actual knowledge of the newly discovered information such that a representation provided for above was false.

*Id.* at p. 10.

The PSA was thereafter amended to reflect a financing agreement in which Da Li agreed to provide Alamo financing in the amount of $400,000 payable over a two year period at an interest

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT & RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT — Page **6** of 27

**McGlinchey Stafford**
2101 4th Avenue, Suite 2050
Seattle, WA 98121
Telephone (206) 657-8820
Facsimile (206) 299-5603

rate of 5%. [D.E. 17, ¶5, Exh. B].[2] The closing of the sale of the Property occurred on September 23, 2021. [D.E. 17, ¶15]. However, prior to the closing, Alamo assigned its rights under the PSA to Auburn. [D.E. 17, ¶¶14-15, Exh. D]. Gaube has admitted that he was the managing member of Auburn. [D.E. 17, ¶3].

### C.      The Property Square Footage Dispute

Prior to the closing date of the sale of the Property Gaube discovered that there was an alleged discrepancy in the square footage of the Property. As early as September 15, 2021, Gaube knew that the actual square footage of the Property was less than what had been included on the rent roll provided to DLD when it calculated the square footage as part of its disclosures made to Alamo during the due diligence period. Declaration of Da Li, ¶34, Exh. C. The discrepancy likely originated because DLD stepped into the shoes of a prior owner and lessor who leased the property to a Bartell Drugs store (formally "The Bartell Drug Company," henceforth "Bartell Drugs"), and pursuant to the rent roll, the property was calculated to provide 15,861 square feet, when in actuality the leased space was only 14,484 square feet. *Id.* The discrepancy between actual square footage and the disclosed square footage in the PSA was likely due to changes in measurement standards since the original Bartell Drugs lease was created over 20 years earlier. *Id.* Specifically, the original Bartell Drugs lease included a loading dock as part of its square footage calculation, despite the fact that industry standards no longer include loading docks in the net rentable area calculations, and this appears to account for the square footage discrepancy. *Id.* Importantly, DLD was entirely unaware of this discrepancy at the time that it provided the rent roll to Alamo during the due diligence period. *Id.* at ¶36.

---

[2] The amendment also states that the partnership entity takes title to the property and shall personally guarantee the loan. However, that is inconsequential and irrelevant as Da Li is not suing the Defendants for breach of guaranty.

PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT & RESPONSE TO DEFENDANTS'       Page **7** of 27
MOTION FOR SUMMARY JUDGMENT

**McGlinchey Stafford**
2101 4th Avenue, Suite 2050
Seattle, WA 98121
Telephone (206) 657-8820
Facsimile (206) 299-5603

Despite being **well aware** of the square footage discrepancy prior to the closing of the Property, Alamo failed to exercise its sole remedy for false representations as set forth in Paragraph 32 of the PSA, which was to terminate the Agreement. Instead, Alamo **voluntarily chose to move forward with the closing of the sale of the Property** fully aware of the square footage discrepancy. Indeed, on September 18, 2021, five days prior to the closing of the sale of the Property, Gaube, as President of Alamo, sent DLD a letter which provided, in relevant part:

> yesterday. We just learned in the last few days that the size of the former Bartell's building as reported by the Seller is inaccurate. All documents provided by the Seller, Colliers, JLL, etc. state that the size of the Bartell's space is 15,861 SF which is exactly what we relied on in completing our underwriting and forecasts. Your immediate reaction may be, well that's the Buyer's problem and this should have been addressed during due diligence. We would have two responses to that position, first it is not reasonable but more importantly Seller signed a commitment required by our Lender stating that all of the management reports completed by Colliers over a two year period are true and correct. Those reports repeatedly state the wrong size for the former Bartell's space. When our architect discovered this possible discrepancy a few days ago while working off the new ALTA we just completed, we asked Colliers to provide clarification of this issue. They could not, so we asked our architect to physically measure the space. This was completed yesterday afternoon and we received the attached e-mail from our architect last evening. The actual size of the space is 14,482 SF. The difference is 1,379 SF. Based on our proforma provided to the Lender, the projected loss of income based on the market rent of $25/SF (as most existing tenants are now paying) is $34,475/yr. At a 6.25% cap this represents a loss in value of $551,600. In an effort to be extremely reasonable and because time is of the essence we would agree to an adjustment based on the purchase price for the Center of $196/SF or $270,284. To summarize we are requesting a price reduction of $270,284 and that the per diem charge be waived for the last week. Thank you kindly for your consideration and cooperation on this last total unanticipated issue. If you are in agreement can you kindly sign this letter at the space provided below.

*Id.* at ¶34. Alamo, by and through its President, Gaube, was already subject to the PSA. Gaube presented the foregoing counteroffer, which DLD rejected. Thus, the options that remained were rescission or ratification of the existing PSA. By virtue of moving forward with the closing, Alamo waived its sole remedy to terminate/rescind the contract for false representation, and instead ratified and accepted the square footage by moving forward with closing.

In sum, there is no question that: (1) the PSA provides that if Alamo discovers that any representation made by DLD turns out to be inaccurate, Alamo's sole remedy was to terminate the PSA; (2) Alamo discovered that there was a discrepancy regarding the square footage prior to the closing of the sale of the Property; (3) Alamo thereafter chose to move forward with the closing.

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT & RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Page **8** of 27

**McGlinchey Stafford**
2101 4th Avenue, Suite 2050
Seattle, WA 98121
Telephone (206) 657-8820
Facsimile (206) 299-5603

1  It is also clear that DLD was entirely unaware of this discrepancy as it was relying on the square

2  footage calculation contained in the aged Bartell Drugs lease.

3         **D.**       **The Tolling Agreement and Arbitration**

4         On June 20, 2022, DLD and Auburn entered into a Tolling Agreement ("Agreement") in

5  which the parties agreed, inter alia, that the statute of limitations for a breach of Paragraph 35 of

6  the PSA would be extended to August 15, 2022 and resolved through arbitration. [D.E. 17, Exh.

7  E]. Paragraph 35 of the PSA provides as follows:

8

> **35. Claims.** Any claim or cause of action with respect to a breach of the representations and warranties set forth herein shall survive for a period of nine (9) months from the Closing Date, at which time such representations and warranties (and any cause of action resulting from a breach thereof not then in litigation, including indemnification claims) shall terminate. Notwithstanding anything to the contrary in this Agreement: (a) Buyer shall not make a claim against Seller for damages for breach or default of any representation or warranty, unless the amount of such claim is reasonably anticipated to exceed $25,000; and (b) under no circumstances shall Seller be liable to Buyer on account of any breach of any representation or warranty in the aggregate in excess of the amount equal to $250,000, except in the event of Seller's fraud or intentional misrepresentation with respect to any representation or warranty regarding the environmental condition of the Property, in which case Buyer's damages shall be unlimited.

13  *Id.* at Exh. A, p. 11.

14         This provision is separate and apart from Paragraph 32, which provides, clearly and

15  unambiguously, that Alamo's sole remedy for discovering the square footage discrepancy **prior**

16  **to closing** was to terminate the Agreement.

17         Auburn has filed an arbitration demand on Da Li and the those parties are currently

18  undergoing arbitration.

19         **E.**       **The Procedural History**

20         Da Li filed its initial complaint on April 23, 2024, in the Western District of Washington,

21  Case No. 2:24-cv-561 (the "First Federal Case"). It was soon discovered thereafter by the

22  undersigned that there was a discrepancy in Da Li's initial corporate disclosure statement relating

23  to the residency of one of its members and so it filed a supplemental amended disclosure statement

PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT & RESPONSE TO DEFENDANTS'    Page **9** of 27
MOTION FOR SUMMARY JUDGMENT

**McGlinchey Stafford**
2101 4th Avenue, Suite 2050
Seattle, WA 98121
Telephone (206) 657-8820
Facsimile (206) 299-5603

on May 14, 2024. See First Federal Case, D.E. 7. This supplemental disclosure statement did not have any impact on the court's diversity jurisdiction in the First Federal Case. Nevertheless, Defendants filed a Motion to Dismiss based on the discrepancy between the residency pled by Da Li in the Complaint and the residency disclosed in the supplemental amended disclosure statement. See First Federal Case, D.E. 13. Da Li likewise filed, with the consent of the Defendants, a motion for leave to file an amended complaint in the First Federal Case pleading the correct jurisdiction of Da Li's member. See First Federal Case, D.E. 16. However, Defendants thereafter puzzlingly chose to file a Motion for Sanctions under Federal Rules of Civil Procedure 11 on August 27, 2024, in which they claimed that Da Li "violated [Rule 11] by either failing to conduct a reasonable inquiry or failing to assert a claim/legal contention warranted by existing law." See First Federal Case, D.E. 22. On September 5, 2024, the court in the First Federal Case entered an order granting Da Li's Motion to Amend and denying the Defendants' Motion to Dismiss. See First Federal Case, D.E. 24. This rendered the Defendants' Motion for Sanctions moot. As part of its order, the court required Da Li to file an amended corporate disclosure statement that clearly identifies the citizenship and domicile of its member(s) as of the date the complaint was filed. *Id.*

For strategic purposes entirely unrelated to diversity jurisdiction, Da Li chose to voluntarily dismiss the First Federal Case on October 1, 2024. See First Federal Case, D.E. 30. To be clear, at no point was there any lack of diversity between the parties in the First Federal Case. On October 28, 2024, Da Li filed its Complaint against the Defendants in the King County Superior Court, Case Number 24-2-24908-7 SEA (the "State Court Case"). Thereafter, on January 23, 2025, and despite spending months challenging diversity jurisdiction in the First Federal Case and even going so far as to seek sanctions against Da Li and its counsel, the Defendants removed the State Court

PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT & RESPONSE TO DEFENDANTS'          Page **10** of 27
MOTION FOR SUMMARY JUDGMENT

**McGlinchey Stafford**
2101 4th Avenue, Suite 2050
Seattle, WA 98121
Telephone (206) 657-8820
Facsimile (206) 299-5603

Case and invoked the diversity jurisdiction if this Court. [D.E. 1]. Defendants' Motion was thereafter filed on April 1, 2025. [D.E. 16].

## III.    ARGUMENT

Plaintiff will address the Defendant's motion first, then address its own request for summary judgment. As set forth in more detail below, Defendant's summary judgment should be denied because there is sufficient consideration to support Da Li's breach of contract claim alleging nonpayment and default upon the subject promissory note. Moreover, even if that were not the case, Da Li has also brought claims against the Defendants for promissory estoppel or, in the alternative, unjust enrichment.

Furthermore, third-party claims related to the PSA are separate and apart from those asserted by Da Li against Defendants herein. Unlike the present action and subject promissory note, these third-party claims and defenses may be subject to an arbitration requirement, and therefore must be decided independently by the arbitrator.[3]

### A.    Standard of Review

"The standard for summary judgment is familiar: 'Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact.'" *Zetwick v. County of Yolo*, 850 F.3d 436, 440 (9th Cir. 2017) (quoting *United States v. JP Morgan Chase Bank Account No. Ending 8215*, 835 F.3d 1159, 1162 (9th Cir. 2016)).

A court's function on summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty*

---

[3] Additionally, as identified above, these separate claims did not survive the closing of the sale of the Property.

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT & RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Page **11** of 27

**McGlinchey Stafford**
2101 4th Avenue, Suite 2050
Seattle, WA 98121
Telephone (206) 657-8820
Facsimile (206) 299-5603

1  *Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). If there is not, summary

2  judgment is warranted. *Safeco Ins. Co. of America v. Young*, Docket No. 2:22-cv-00896-BJR,

3  2022 U.S. Dist. LEXIS 180716, at \*5-6 (W.D. Wash. Oct. 3, 2022).

4  **B.    There Was Sufficient Consideration To Enforce The Note**

5  Defendants are incorrect that there was no consideration exchanged to support Da Li's

6  breach of contract claim. Defendants' argument is unclear as to why they contend there was no

7  consideration – at no point in their Motion do the Defendants take the position that they did not

8  receive any benefit as a result of the Note. In fact, summary judgment in favor of Plaintiff as to

9  Count I of the Complaint (Breach of Note) is appropriate.

10  Breach of note is a contractual claim with the elements being: (1) a valid promise to repay;

11  (2) a breach of that promise; and (3) resulting damages. *Strich v. Accelitec, Inc.*, C13-1092RSL,

12  2013 WL 5966536, at \*1 (W.D. Wash. Nov. 8, 2013); *Baldwin v. Silver*, 165 Wn. App. 463, 473,

13  269 P.3d 284 (2011). Per the terms of the Note, Da Li lent the Defendants $400,000, which was

14  paid to Auburn in the form of a financing credit at the request of the Defendants. See Da Li

15  Declaration, ¶11-12; [D.E. 17, Exh. D]. On September 2, 2021, the Defendants promised to re-pay

16  Da Li the $400,000 it lent at 5% interest, paid quarterly, with a maturity date of September 1, 2023.

17  [D.E. 17, Exh. C]; *see also* Da Li Declaration, ¶10. The Defendants made a single payment under

18  the Note on April 30, 2022 in the amount of $10,356.17. Da Li Declaration, ¶15. The Defendants

19  have not made any additional payments and they failed to pay the total amount due and owing

20  under the Note on the maturity date of September 1, 2023. *Id.* at 17.

21  While Gaube claims that "DLD never loaned or disbursed any funds to me or any of my

22  co-defendants individually," [D.E. 17, ¶10], his statements reflect at least two significant errors.

23  First, Gaube appears to be impermissibly making a declaration on behalf of the three other

PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT & RESPONSE TO DEFENDANTS'    Page **12** of 27
MOTION FOR SUMMARY JUDGMENT

**McGlinchey Stafford**
2101 4th Avenue, Suite 2050
Seattle, WA 98121
Telephone (206) 657-8820
Facsimile (206) 299-5603

1    Defendants here and further, his individual receipt of the funds is not the sole form of consideration

2    that would result in the enforceability of the Note. Fundamentally Gaube's statement exposes the

3    central error to his position, insofar as he construes consideration much too narrowly and in a way

4    that is not supported in law or fact.

5        Consideration is defined as "any act, forbearance, creation, modification or destruction of

6    a legal relationship, or return promise given in exchange." *King v. Riveland*, 125 Wn. 2d 500, 505,

7    866 P.2d 160 (1994). "Legal sufficiency is not concerned with comparative value but with that

8    which will support a promise." *Labriola v. Pollard Group, Inc.*, 152 Wn. 2d 828, 833 (2004). "[I]t

9    is well settled that a consideration sufficient to support a promise need not always, in the last

10   analysis, have an actual value." *Puget Mill Co. v. Kerry*, 183 Wn. 542, 557, 49 P.2d 57 (1935).

11       Defendants cannot escape liability under the Note simply because a) a physical form of

12   legal tender was not placed in their hands, b) the tender was reflected in a balance sheet rather than

13   cash or check, nor because c) the $400,000 they promised to repay was applied to purchase

14   property on behalf of Auburn, a non-party to this action. Defendants own Auburn and they stand

15   to benefit from Auburn owning a valuable assets which increase the value of their ownership

16   interests. Defendant Gaube instructed DLD to credit this payment. See Da Li Declaration, ¶12. As

17   set forth in the Restatement (Second) of Contracts § 71:

18       (1) To constitute consideration, a performance or a return promise must be
         bargained for.
19       …
         (4) The performance or return promise may be given to the promisor or some other
20       person. It may be given by the promisee or by some other person.

21   Restat. 2d of Contracts, § 71.

22       Comment (e) to the Restatement provides that "[i]t matters not from whom the

23   consideration moves or to whom it goes. If it is bargained for and given in exchange for the

PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT & RESPONSE TO DEFENDANTS'        Page **13** of 27
MOTION FOR SUMMARY JUDGMENT

**McGlinchey Stafford**
2101 4th Avenue, Suite 2050
Seattle, WA 98121
Telephone (206) 657-8820
Facsimile (206) 299-5603

1    promise, the promise is not gratuitous." *Id.* at Comment (e). "A party to a bargained-for exchange

2    may agree that the consideration for its promise will be delivered to a third party." *Please-Graham,*

3    *LLC v. Loshbaugh*, 164 Wn. App. 530, 539, 269 P.3d 1038, 1044 (2011). See *Christie v. Gmeiner*,

4    62 Wn. 2d 808, 813, 384 P.2d 812, 814 (1963) (Where object of loan was to satisfy borrower's

5    obligation to third party, upon delivery of lender's check to third party the obligation was satisfied

6    and there was no failure of consideration for note to lender); *Harrison v. Puga*, 4 Wn. App. 52, 62,

7    480 P.2d 247, 254 (1971) (the enforceability of the contract remains intact even when payments

8    are directed to a third party). *See also LSQ Funding Group, L.C. v. EDS Field Services*, 879 F.

9    Supp. 1320, 1329 (M.D. Fla. 2012) ("Consideration need not pass directly to the promisor, but

10   may move to either the promisor or a third person.") Moreover, Gaube and his codefendants, as

11   the members of both Alamo and Auburn, certainly received a benefit from the financing credit.

12   [*see e.g.* D.E. 17, ¶3].  To accept Defendants' argument here would create a dangerous precedent

13   undermining the enforceability of financing contracts and permitting unscrupulous borrowers to

14   escape liability by simply directing their lender to disburse funds to benefit entities under their

15   ownership and control.

16        Per the terms of the Note, "the failure to make an payment of principal or any amount

17   payable hereunder when due" constitutes an Event of Default. [D.E. 17, Exh. C]; Da Li

18   Declaration, ¶6. As a result, the Defendants are in default under the terms of the Note and Da Li

19   has suffered damages as a result. Da Li Declaration, ¶18. If an Event of Default occurs, the

20   Defendants are obligated under the Note to pay interest on the entire amount in default from the

21   date of the Event of Default at an annual rate equal to lesser of 15% per annum or the highest rate

22   permitted by applicable law. Da Li Declaration, ¶18-25. As of the date of the filing of his Motion,

23   the Defendants owe Da Li $596,939.72 plus attorneys' fees and costs. Da Li Declaration, ¶24.

PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT & RESPONSE TO DEFENDANTS'          Page **14** of 27
MOTION FOR SUMMARY JUDGMENT

**McGlinchey Stafford**
2101 4th Avenue, Suite 2050
Seattle, WA 98121
Telephone (206) 657-8820
Facsimile (206) 299-5603

1    In conclusion, there is no question of fact that: (1) the Defendants promised to re-pay Da

2    Li the $400,000 with interest; (2) the Defendants have failed to do so; and (3) Da Li has suffered

3    damages as a result. Summary judgment in favor of Plaintiff as to Count I of the Complaint is

4    therefore proper, and Defendant's request for summary judgment on this issue must be denied.

5    ### C.     Da Li Has Asserted Promissory Estoppel and Unjust Enrichment

6            Even if there was insufficient consideration to support Da Li's breach of contract claim,

7    Defendants appear to wholly ignore the fact that Da Li has also asserted, in the alternative, causes

8    of action for Promissory Estoppel (Count II) and Unjust Enrichment (Count III). Summary

9    judgment in favor of Plaintiff as to both is also appropriate.

10           The elements of promissory estoppel are: (1) a promise which (2) the promisor should

11   reasonably expect to cause the promise to change his potion and (3) which does cause the promise

12   to change his position (4) justifiably relying on the promise, in such a manner that (5) injustice can

13   be avoided only by enforcement of the promise. *Washington Education Assn. v. Dept. of

14   Retirement Systems*, 181 Wn. 2d 212, 225, 332 P.3d 428 (2014). Importantly, "[t]he doctrine of

15   promissory estoppel was developed to cover certain circumstances in which consideration is

16   lacking, but the enforcement of the promise is appropriate because the promisor should expect the

17   promise to induce detrimental reliance on the part of the promisor." *Doron v. E. Wash. Univ.*,

18   Docket No. 31636-0-III, 2014 Wn. App. LEXIS 2849, at *75 (App. Dec. 9, 2014). See *Hatfield v.

19   Columbia Fed. Sav. Bank*, 57 Wn. App. 876, 885, 790 P.2d 125 (1990) (overruled on other

20   grounds). In this instance, the Complaint properly pleads all of these necessary elements, supported

21   by the Da Li Declaration [D.E. 19], and at no point in their Motion do the Defendants refute that

22   they made the promise to repay the $400,000 lent or that the $400,000 was never lent. Indeed,

23

PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT & RESPONSE TO DEFENDANTS'          Page **15** of 27
MOTION FOR SUMMARY JUDGMENT

**McGlinchey Stafford**
2101 4th Avenue, Suite 2050
Seattle, WA 98121
Telephone (206) 657-8820
Facsimile (206) 299-5603

1    Exhibit D to the Gaube Declaration shows that the $400,00 was lent as a credit to Auburn. [D.E.

2    17].

3            Additionally, the elements for unjust enrichment in Washington are: (1) a benefit conferred

4    on the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit,

5    and (3) the acceptance or retention by the defendant of the benefit under such circumstances that

6    would make it inequitable for the defendant to retain the benefit without the payment of its value.

7    *Young v. Young*, 164 Wn. 2d 477, 484-85, 191 P.3d 1258 (2008). In this instance, the company

8    managed by Gaube received a $400,000 financing credit following the Defendants' execution of

9    the Note. This Court is not presented with any declarations or other summary evidence from any

10   of the Defendants other than Gaube, who merely claims he did not receive this payment directly.

11   Yet certainly he received an indirect benefit through the improvement in value and position of a

12   company he manages and was therefore unjustly enriched.

13           While Gaube seems to argue that the $400,000 Note should simply be ignored in equity

14   due to the square footage discrepancy, this was not a negotiated position. Without any substantive

15   basis to invalidate Plaintiff's contract rights, this Court would likely violate Da Li's rights to due

16   process and to contract should it refuse to enforce the contract's terms, setting a precedent that

17   would negatively impact the flow of commerce. Notwithstanding the fact that there clearly is

18   consideration sufficient to support the enforcement of the Note, both the promissory estoppel and

19   unjust enrichment claims survive any challenge to the sufficiency of the consideration.

20           For the foregoing reasons, summary judgment in favor of Plaintiff is proper, and

21   Defendant's request for summary judgment must be denied insofar as they have failed to rebut

22   Plaintiff's claims in Count II and III of Plaintiff's Complaint.

23

PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT & RESPONSE TO DEFENDANTS'        Page **16** of 27
MOTION FOR SUMMARY JUDGMENT

**McGlinchey Stafford**
2101 4th Avenue, Suite 2050
Seattle, WA 98121
Telephone (206) 657-8820
Facsimile (206) 299-5603

**D.**     **The Note Dispute Should Not Be Compelled To Arbitration**

Defendants move this Court to compel Da Li's claims to arbitration based on the allegation that the Defendants are third party beneficiaries under the PSA entered into between a DLD (not the Plaintiff) and Auburn (not the Defendants), claiming that this dispute falls within the scope of the PSA. Defendants also claim that the PSA and Note are inextricably intertwined. These arguments necessarily fail.

    *i.*     *The Defendants Are Not Intentional Third Party Beneficiaries To The PSA And The Claims Asserted Herein Under The Note Are Outside The Scope Of The Agreement*

As an initial matter, the Defendants are not intended third party beneficiaries under the PSA. Under Washington law, a third-party beneficiary contract exists when the contracting parties, at the time they enter into the contract, intend that the promisor will assume a direct obligation to the claimed beneficiary. The test of intent is an objective one: whether performance under the contract necessarily and directly benefits the third-party. *Warner v. Design and Build Homes, Inc*., 128 Wn. App. 34, 43 (2005); *Kim v. Moffett*, 156 Wn. App. 689, 699 (2010). An incidental, indirect, or consequential benefit to a third party is insufficient to demonstrate an intent to create a contract directly obligating the promisor to perform a duty to a third party. *Id.*

An incidental beneficiary of a contract acquires no right to recover damages for nonperformance of the contract. *Id.* The critical question in determining whether a third-party beneficiary status is created by a contract is whether the benefits flow directly from the contract or whether they are merely incidental, indirect, or inconsequential. *Id.* See *Mcdoran Constr. Co. v. Murray*, 5 Wn. App. 68, 70 (1971).

The intent to create a third-party beneficiary contract is determined by construing the terms of the contract as a whole, in light of the circumstances under which it is made. *Donald B. Murphy*

*Contractors, Inc. v. King County*, 112 Wn. App. 192, 196 (2002) (denying third party beneficiary status to a homeowner who wished to sue a subcontractor because "a desire to benefit a third party is not the same as an intent to assume a direct obligation to that third party"); *Deep Water Brewing, LLC v. Fairway Resources Ltd.*, 152 Wn. App. 229, 255-256 (2009) (finding no third party beneficiary status when there was a) no mention of benefitting the third party, b) no attempt to assign the benefits to said party, and c) no express intention by the promisor to assume a direct obligation to the third party at the time the contract is created); *Key Development Inv., LLC v. Port of Tacoma*, 173 Wn. App. 1, 29-30 (2013). The court must look to the terms of the contract to determine whether performance under the contract would necessarily and directly benefit the third party, rather than examining the subjective motives or desires of the parties. *Kim*, at 699.

Defendants are only capable of removing this issue to arbitration if the Defendants have rights under the PSA, *not* the Note. And construing the PSA as a whole, it does not mention nor refer to the Defendants or the Note. In fact, quite the opposite: Paragraph 42(a) of the PSA contains the following integration clause:

> **42. Miscellaneous Provisions.**
>
> a. **Complete Agreement.** This Agreement and any addenda and exhibits thereto state the entire understanding of Buyer and Seller regarding the sale of the Property. There are no verbal or other written agreements which modify or affect the Agreement, and no modification of this Agreement shall be effective unless agreed in writing and signed by the parties.

[D.E. 17, Exh. A, p. 13.]

"An integration clause providing that the written documents constitute the parties' entire agreement strongly supports a conclusion that the parties' agreement was fully integrated; if that is the case, parol evidence is inadmissible." *Olsen Media v. Energy Sciences*, 32 Wn. App. 579, 584, 648 P.2d 493 (1982). Not only does this demonstrate that the Defendants are not intended

PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT & RESPONSE TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

Page **18** of 27

**McGlinchey Stafford**
2101 4th Avenue, Suite 2050
Seattle, WA 98121
Telephone (206) 657-8820
Facsimile (206) 299-5603

third-party beneficiaries under the PSA, but it also shows that the this dispute regarding the Note does not fall within the scope of the PSA. To the extent that Defendants attempt to claim third party beneficiary status to invoke the PSA via their role as members/managers of the purchaser, they would not stand in the shoes of a third party, but instead are merely agents of the contracting party. More importantly, though, they would only be entitled to arbitrate issues under the PSA, not a fully extrinsic agreement that is neither mentioned, incorporated, nor benefitted by performance under the PSA.

In this instance, there is no evidence or indication that the Defendants are third party beneficiaries to the PSA. Defendants' breach of the note does not fall within the scope of the PSA insofar as the PSA itself does not mention the Note, nor does it mention the Defendants. Instead, it is focused solely on claims that Auburn can bring under Paragraph 35 of the PSA (i.e., representations and warranties made by Da Li in connection with the sale of the Property).

Indeed, the Note itself provides that principal and interest shall be paid without deduction or offset in immediately available funds. [D.E. 17, Exh. C]. It is therefore legally impossible for the Defendants to use the amounts owed under the Note as an offset for any of Da Li's alleged liability under the PSA, further demonstrating the independence of the Note and the PSA and providing ultimate support that the Defendants are not intended third party beneficiaries under the PSA and that the claims asserted herein do not fall within the scope of the Agreement.

Notably, the Defendants have adopted the position that "[t]he Note does not purport to be a guaranty, and any claim that it is would be inconsistent with the Second Amendment to the PSA…the [N]ote does not name AF Auburn as the principal obligor, nor does it suggest that Defendants were agreeing to answer for the debt of another. Instead, it reads as a primary obligation…." [D.E. 16, p. 11]. Da Li agrees with this position. The Second Amendment to the

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT & RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Page **19** of 27

**McGlinchey Stafford**
2101 4th Avenue, Suite 2050
Seattle, WA 98121
Telephone (206) 657-8820
Facsimile (206) 299-5603

1   PSA makes it abundantly clear that the Defendants are not, and cannot be, guarantors to the PSA

2   and Auburn is not named as the principal obligor.  Since the Defendants have no basis to invoke

3   rights under the PSA, their claim for removal to arbitration must necessarily fail.

4          On the other hand, to the extent Defendants' efforts operate in the other direction, implicitly

5   be seeking to tie the PSA to the Note for the benefit of non-party, Auburn to claim Auburn has

6   third party beneficiary status under the Note, such argument is so far afield from the law and facts

7   as to be violative of Rule 11.  The Second Amendment to the PSA explicitly prevents the

8   Defendants from guaranteeing the PSA on behalf of Auburn, it is legally impossible under

9   Washington law for the Defendants (as the promisors under the Note) to have any direct obligation

10  to the claimed beneficiary Auburn, which is the hallmark of third-party beneficiary status under a

11  contract. Auburn is not a party to this suit, nor an intended third-party beneficiary under the plain

12  and unambiguous terms of the Note. *Kim v. Moffett*, 156 Wn. App. 701 ("Here, there is no

13  indication in the terms of the contract the parties intended to benefit JME….). Any right Auburn

14  has to arbitrate its claims against non-party, DLD under the PSA is wholly divorced from Plaintiff

15  and Defendants' rights and duties under the Note.

16         Because The Second Amendment to the PSA is irrefutable evidence, supported by the

17  Defendants themselves, that not only are the Defendants not considered intended third-party

18  beneficiaries under the PSA as they have no legal obligations to Auburn under the PSA, but that

19  the PSA and Note can and must be treated separately for purposes of this lawsuit. Auburn is not a

20  party to this action nor to the Note and therefore has no right to invoke its arbitration clause herein.

21         The PSA and the Note are separate instruments entered into by separate parties, involve

22  separate subject matter, separate guarantees, and they are subject to separate litigation procedures.

23  Performance under the Note is not predicated on performance under the PSA, and likewise there

PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT & RESPONSE TO DEFENDANTS'          Page **20** of 27
MOTION FOR SUMMARY JUDGMENT

**McGlinchey Stafford**
2101 4th Avenue, Suite 2050
Seattle, WA 98121
Telephone (206) 657-8820
Facsimile (206) 299-5603

is no requirement in either instrument that the sale of the Property close to result in the enforceability of the Note. There is absolutely no evidence that the Defendants were intended to be beneficiaries under the PSA, and tellingly, neither Gaube, nor any of the other Defendants, have submitted any declarations stating that they were intended third party beneficiaries to the PSA. Simply because Auburn may have received benefit from the Note by way of a $400,000 finance credit made at the instruction of the Defendants does not automatically confer third party beneficiary status on behalf of all Defendants under the PSA. If that were the case then any time a third party benefits from a contract, in any fashion, no matter how incidental or unintentional, then that third party can enforce the terms of the contract as a third party beneficiary. However, that is not the case in Washington, nor anywhere else. At most, the Defendants are incidental third party beneficiaries. And an incidental beneficiary has no right to invoke nor enforce an arbitration agreement that is untethered from the contract at issue in this case.

ii.    *Defendants' Claims Are Not Inextricably Intertwined Nor Viable*

Defendants assert that arbitration is proper because the claims under the PSA and Note are inextricably intertwined. As noted in Section III(D)(i), this is clearly not the case—the contracts involve wholly different parties, different obligations, and neither contract makes mention of any intended benefit conferred upon a third party as a result of the parties' obligations. As with all promissory notes, the Note in this case is an unconditional promise to pay. At the direction of Gaube, tender of the funds promised under the Note occurred via the lender (Plaintiff's predecessor-in-interest) issuing a financing credit to Auburn as reflected in the settlement statement for its purchase of the White River Junction Shopping Center.  If Defendants are dissatisfied with the application of their funds from the Note, their remedy is with Auburn as

PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT & RESPONSE TO DEFENDANTS'        Page **21** of 27
MOTION FOR SUMMARY JUDGMENT

**McGlinchey Stafford**
2101 4th Avenue, Suite 2050
Seattle, WA 98121
Telephone (206) 657-8820
Facsimile (206) 299-5603

1    recipient of said funds. If Defendants are dissatisfied *on behalf of Auburn* with the purchase price

2    or performance under the PSA, their claims are expressly waived under Paragraph 32 of the PSA.

3          As noted in Section II(C), it is legally impossible for Da Li to be liable to Auburn under

4    the terms of the PSA because Auburn (through Gaube) was well aware of any diminishment of

5    square footage well before the closing of the sale of the Property to the Defendants. Per Paragraph

6    32 of the PSA, Auburn's sole remedy was to cancel the sale. Auburn chose instead to go forward

7    with the sale, thereby waiving the right to pursue a future cause of action against Da Li for this

8    issue. Da Li has viable claims against the Defendants for breach of the unconditional promise to

9    pay under Note. However, non-party Auburn does *not* have a claim against Da Li under the PSA

10   both because Plaintiff is not the party with whom it contracted, as well as the fact that Auburn

11   waived its claim under Paragraph 32.

12         Defendants have articulated no breach by Plaintiff, no equitable basis to unwind the Note

13   between Plaintiff and Defendants, and have not articulated any obligation to arbitrate under

14   Plaintiff and Defendants' contract. Defendants' claims, if any, exist as against Auburn to the extent

15   that they seek remuneration for the funds they tendered on its behalf. Defendants hold no direct

16   claims under the PSA. Claims that Auburn purports to hold under the PSA are not against Plaintiff,

17   but against DLD, but are also waived as explained above. It had the right to terminate the contract

18   under Paragraph 32 of the PSA and opted not to do so. That is not a basis to find breach by DLD

19   or Plaintiff.

20         Auburn's waiver is not simply a contractual provision prohibiting further remedies against

21   DLD or Plaintiff. The law in Washington is that proceeding with a property purchase after a

22   discrepancy in the square footage results in a waiver of the right to claim damages for the

23   misrepresentation. *Kessinger v. Anderson*, 31 Wn. 2d 157, 168-168, 196 P.2d 289 (1948) (waiver

PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT & RESPONSE TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

Page **22** of 27

**McGlinchey Stafford**
2101 4th Avenue, Suite 2050
Seattle, WA 98121
Telephone (206) 657-8820
Facsimile (206) 299-5603

of the right to damages was found when, after learning of a cloud on the title, the purchasers nevertheless proceeded with the purchase, incurred expenses to clear the title, then sued for recovery of expenses); *Bowman v. Webster*, 44 Wn.2d 667, 669-670, 269 P.2d 960 (1954) (court held that purchasers who, after discovering the true boundary lines of the property, refinanced the contract, paid the balance due, and accepted the deed, had waived their right to sue for damages); *Peterson v. Neal*, 48 Wn. 2d 192, 195, 292 P.2d 358, 360 (1956) (incidents and circumstances must have occurred subsequent to discovery of the fraud by the purchasers).

Simply put, the Defendants, either as parties to the Note or incidental third party beneficiaries under the PSA, cannot seek damages against Da Li under the Agreement for any discrepancies in the square footage of the Property which they were aware of prior to the closing of the sale of the Property. As a result, the claims under the PSA and under the Note clearly are not intertwined, and compelling this matter to arbitration is improper given that the Defendants are both contractually and legally barred from stating a cause of action against Da Li for damages related to the square footage of the Property.[4]

**E.    None Of The Affirmative Defenses Preclude The Entry Of Summary Judgment**

Lastly, Defendants have raised nine affirmative defenses. However, none of them preclude the entry of summary judgment. Defenses one through eight are boilerplate, non-specific, single-sentence defenses which do not provide Da Li with fair notice, as is required in the Ninth Circuit. [D.E. 11, p. 5-6]. *Ashcroft v. Iqbal*, 556 U.S. 662, 663, 129 S.Ct. 1937, 1940 (2009). Threadbare affirmative defenses such as these fail to meet this jurisdiction's pleading standard. *Hennessey v. Radius Global Solutions LLC*, Docket No. 3:24-cv-05654-DGE, 2024 WL 4696134,

---

[4] For all of these reasons the Defendants' request for stay relief should also be denied.

PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT & RESPONSE TO DEFENDANTS'     Page **23** of 27
MOTION FOR SUMMARY JUDGMENT

**McGlinchey Stafford**
2101 4th Avenue, Suite 2050
Seattle, WA 98121
Telephone (206) 657-8820
Facsimile (206) 299-5603

at *2-3 (W.D. Wash. Nov. 6, 2024). Moreover, even if they did meet this standard (which they do

not), they are easily refuted:

- First Affirmative Defense: Defendants state that the Complaint fails to state a claim upon which relief can be granted. However, the Complaint properly pleads the elements for each cause of action asserted therein. Further, as stated in *Hennessey*, "[t]he Ninth Circuit is clear that failure to state a claim is not a proper affirmative defense." *Id*. at 3.

- Second Affirmative Defense: Defendants state that the Complaint is barred, in whole or in part, by the doctrine of estoppel. It is entirely unclear how Da Li is estopped from enforcing the terms of the Note. To the extent the Defendants are referring to an unrelated real estate purchase contract, Da Li has addressed such a defense in lengthy briefing above.

- Third Affirmative Defense: Defendants state that the Complaint is barred by the doctrine of unclean hands. Similar to the Second Affirmative Defense, it is entirely unclear what alleged actions Da Li took which rose to the level of unclean hands. To the extent the Defendants are referring to an unrelated real estate purchase contract, Da Li has addressed such a defense in lengthy briefing above.

- Fourth Affirmative Defense: Defendants state that the Complaint is barred by the doctrine of waiver. Similar to the Second Affirmative Defense, it is entirely unclear what alleged actions Da Li took which resulted in a waiver. To the extent the Defendants are referring to an unrelated real estate purchase contract, Da Li has addressed such a defense in lengthy briefing in its Response above.

- Fifth Affirmative Defense: Defendants state Plaintiff's claims are barred because it did not incur any injury or damages. However, as set forth in the Da Li Declaration, Da Li incurred substantial damages as a result of Defendant's breach of the Note. See Da Li Declaration, ¶12-25.

- Sixth Affirmative Defense: Defendants state that Da Li's injuries and damages were caused by Da Li for which Defendants are not responsible. Similar to the Second Affirmative Defense, it is entirely unclear what alleged actions Da Li took which resulted Da Li causing its own injuries and damages. To the extent the Defendants are referring to an unrelated real estate purchase contract, Da Li has addressed such a defense in lengthy briefing in its Response above.

- Seventh Affirmative Defense: Defendants state that Da Li has failed to mitigate its damages. It is entirely unclear how Da Li allegedly failed to mitigate its damages in this matter. To the extent the Defendants are referring to an unrelated real estate

PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT & RESPONSE TO DEFENDANTS'          Page **24** of 27
MOTION FOR SUMMARY JUDGMENT

**McGlinchey Stafford**
2101 4th Avenue, Suite 2050
Seattle, WA 98121
Telephone (206) 657-8820
Facsimile (206) 299-5603

purchase contract, Da Li has addressed such a defense in lengthy briefing in its Response above.

- Eighth Affirmative Defense: Defendants state that Da Li's Complaint is barred by its own material breach of contract. To the extent the Defendants are referring to an unrelated real estate purchase contract, Da Li has addressed such a defense in lengthy briefing in its Response above.

- Defendants' ninth and final affirmative defense alleges that Da Li's damages should be reduced or offset based on Plaintiff's breach of related arguments. [D.E. 11, p. 6]. As is briefed in the Response above, the Note specifically provides as follows:

> 15.  **Payment Without Offset.**  Principal and interest shall be paid without deduction or offset in immediately available funds in lawful money of the United States of America. Payments shall be deemed received only upon actual receipt by Lender.

[D.E. 17, Exh. C].  On its face, the Note prevents an offset or reduction in payments. Under Washington law, if the contractual language is clear and unambiguous (in which this case it is), the courts must enforce the written contract as is. *RSD AAP, LLC v. Alyeska Ocean, Inc.,* 190 Wn. App. 305, 315-316 (2015); *Lehrer v. State, Dept. of Social and Health Services*, 101 Wn. App. 509, 515 (2000).

In sum, none of the nine affirmative defenses asserted by the Defendants preclude the entry of summary judgment in favor of Da Li.

## IV.    CONCLUSION

For the foregoing reasons the Plaintiff, DA LI DEVELOPMENT USA, LLC, respectfully requests that this Honorable Court deny the Defendants' Motion for Summary Judgment and grant Plaintiff's Motion for Summary Judgment, and award all other relief that this Court deems just and proper.

PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT & RESPONSE TO DEFENDANTS'        Page **25** of **27**
MOTION FOR SUMMARY JUDGMENT

**McGlinchey Stafford**
2101 4th Avenue, Suite 2050
Seattle, WA 98121
Telephone (206) 657-8820
Facsimile (206) 299-5603

1  Respectfully submitted on April 28, 2025.

2                                    McGLINCHEY STAFFORD, PLLC

3                                    /s/ Charles E. Stoecker
                                     Charles E. Stoecker, WSBA No. 62536
4                                    Rhiannon D. Funke, WSBA No. 52227
                                     2101 4th Avenue, Suite 2050
5                                    Seattle, WA 98121
                                     cstoecker@mcglinchey.com
6                                    rfunke@mcglinchey.com
                                     Telephone:  (656) 228-0238
7                                    Facsimile:  (954) 252-3806

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

PLAINTIFF'S MOTION FOR SUMMARY              Page **26** of 27            **McGlinchey Stafford**
JUDGMENT & RESPONSE TO DEFENDANTS'                                  2101 4th Avenue, Suite 2050
MOTION FOR SUMMARY JUDGMENT                                             Seattle, WA 98121
                                                                   Telephone (206) 657-8820
                                                                   Facsimile (206) 299-5603

1

## CERTIFICATE OF SERVICE

2          The undersigned does hereby declare: I am 18 years old or older and not a party to this

3  case.  I certify on the date set forth below I electronically filed the foregoing document through

4  the Western District of Washington (WDWA) PACER e-filing portal, which will send notification

5  and a copy of this document to counsel of record for the Defendants.

6                                                McGLINCHEY STAFFORD, PLLC

7                                                  /s/ Charles E. Stoecker
                                                 Charles E. Stoecker, WSBA No. 62536
8                                                Rhiannon D. Funke, WSBA No. 52227
                                                 2101 4th Avenue, Suite 2050
9                                                Seattle, WA 98121
                                                 cstoecker@mcglinchey.com
10                                               rfunke@mcglinchey.com
                                                 Telephone:  (656) 228-0238
11                                               Facsimile:  (954) 252-380

12

13

14

15

16

17

18

19

20

21

22

23

PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT & RESPONSE TO DEFENDANTS'          Page **27** of 27
MOTION FOR SUMMARY JUDGMENT

**McGlinchey Stafford**
2101 4th Avenue, Suite 2050
Seattle, WA 98121
Telephone (206) 657-8820
Facsimile (206) 299-5603